UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GARY METZGAR, RICHARD MUELLER,
SHERWOOD NOBLE, DANIEL O'CALLAGHAN,
CHARLES PUGLIA, KEVIN REAGAN, and
RONALD REAGAN,

                                 **COMPLAINT**

                Plaintiffs,            **CIV NO.: _____**

v.

U.A. PLUMBERS & STEAMFITTERS
LOCAL 22 PENSION FUND,

BOARD OF TRUSTEES
U.A. PLUMBERS & STEAMFITTERS
LOCAL 22 PENSION FUND,

DONALD BROWN, JR., RICHARD COSTANZO, JEREMIAH DONOVAN, DAVID
GRIMBLE, PATRICK LOOMIS, RANDOLPH LUTZ, ROBERT MAZE, DAVID
QUACKENBUSH, PETE SEAGER, SR., each of whom are sued in their capacity as former
Trustee and fiduciary of the U.A. PLUMBERS & STEAMFITTERS LOCAL 22 PENSION
FUND,

DANIEL BRITZZALARO, RICHARD EVANS, JOHN NUTTLE, MICHAEL McNALLY,
VAN MOLLENBERG, DAVID MUSKOPF, JOHN SAMAR, GEORGE SCHALK, each of
whom are sued in their capacity as Trustee and fiduciary of the U.A. PLUMBERS &
STEAMFITTERS LOCAL 22 PENSION FUND,

E. MICHAEL REDMOND, in his capacity as a former administrator and fiduciary of the U.A.
PLUMBERS & STEAMFITTERS LOCAL 22 PENSION FUND, and

DEBRA KORPOLINSKI, in her capacity as
Plan Administrator and fiduciary of the U.A. PLUMBERS &
STEAMFITTERS LOCAL 22 PENSION FUND.

                Defendants.
_____

## COMPLAINT

The above-named Plaintiffs, by their legal counsel, Christen Archer Pierrot, Esq., and

Matthew K. Pelkey, Esq., for their Complaint as against Defendants, allege and say as follows:

## INTRODUCTION

1.      Plaintiffs allege that Defendants violated the Employee Retirement Income

Security Act ("ERISA"), including the anti-cutback provision, Section 204(g), of, 29 U.S.C. §

1054(g), and the terms of the Plaintiffs' pension plan as described more specifically below,

where:

      a.      Defendants processed and approved Plaintiffs' various early retirements for which each Plaintiff was age and service eligible, pursuant to the terms of the U.A. Plumbers and Steamfitters Local No. 22 Pension Fund Plan ("Plan");

      b.      Defendants paid to each Plaintiff for years and years his respective early retirement benefits for such early retirement;

      c.      each Plaintiff was working in Non-Disqualifying post-retirement employment as such employment was defined by the Plan at the time that each Plaintiff retired and where such employment was non-Plan and non-Union managerial employment;

      d.      Defendants summarily and unilaterally redefined the term "retire" to require a total severance of employment with the intention of never returning to work, regardless of whether the Plaintiff had severed his relationship with the Plan and/or was performing Non-Disqualifying post-retirement employment; and by doing so

      e.      Defendants summarily and unilaterally amended the definition of "Non-Disqualifying Employment" under the Plan to include any post-retirement employment for participating employers, even where certain employment had been made Non-Disqualifying by the Plan; and where

      f.      Defendants thereby determined that Plaintiffs had not actually retired in the first instance; and

      g.      Defendants thereby threatened to terminate and/or did terminate Plaintiffs'

2

early retirement benefits until and unless each ceased all employment with participating employers in U.A. PLUMBERS & STEAMFITTERS LOCAL 22 PENSION FUND; and

h.      Defendants forced some of the Plaintiffs to re-retire under a new and amended Plan in order to resume receiving the pension benefits to which each Plaintiff was already entitled to receive by virtue of his original retirement years ago.

2.      Plaintiffs bring claims under Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) to recover benefits due them as a result of the Defendants' unlawful actions, under Section 502 of ERISA, 29 U.S.C. §1132(a)(3), "to enjoin any act or practice which violates . . . the terms of the plan . . . ," under Section 404 of ERISA, 29 U.S.C. § 1132(a)(2) for various breaches of fiduciary duties, under Section 510 of ERISA, 29 U.S.C. § 1140 for unlawful discrimination and interference with protected rights, and under Section 409(a) of ERISA, 29 U.S.C. § 1109(a) for an Order directing the fiduciary defendants to bear personal responsibility to reimburse the plan for any losses resulting from the breach of their responsibilities, obligations, or duties. Plaintiffs further seek a declaratory judgment and finding that each Plaintiff's subsequent 2012 retirement is null and void, that his original retirement date is effective, and that the Plan that governs and controls each Plaintiff's retirement benefits is the Plan in effect at the time that each Plaintiff originally retired years ago.

## JURISDICTION

3.      The Court has federal question jurisdiction under 28 U.S.C. §1331 and 29 U.S.C. §1132 in that Plaintiffs allege violations of ERISA, 29 U.S.C. §§1001-1461.

3

## VENUE

4.      Venue is proper under 28 U.S.C. §1391(b)(2) and 29 U.S.C. §1132(e) in that a substantial part of the events or omissions giving rise to the claim occurred in Erie County, New York and/or the "breach took place" in Erie County, New York (29 U.S.C. §1132(e)(2)).

## PARTIES

5.      Plaintiff GARY METZGAR (hereinafter referred to individually as "METZGAR," or collectively as "PLAINTIFFS") is a resident of the County of Erie, and is a participant in the Plan. He retired in 2008, prior to attaining age 65.  Shortly thereafter he commenced Non-Disqualifying Employment by working in a non-union, non-Plan based managerial position in the construction industry while receiving his pension benefit and continued to so work after the "retirement" and "disqualifying employment" definitions were amended by The FUND in December 2011. Plaintiff Metzgar's early pension benefit has been terminated as of February 1, 2012 since he chose to continue working in his employment.

6.      Plaintiff RICHARD MUELLER (hereinafter referred to individually as "MUELLER," or collectively as "PLAINTIFFS") is a resident of the County of Erie, and is a participant in the Plan. He retired in May 2004, prior to attaining age 65.  Shortly thereafter he commenced Non-Disqualifying Employment by working in a non-union, non-Plan based managerial position in the construction industry while receiving his pension benefit and continued to so work after the "retirement" and "disqualifying employment" definitions were amended by The FUND in December 2011. Plaintiff Mueller's early pension benefit was terminated as of February 1, 2012 since he chose to continue working in his employment.

7.      Plaintiff SHERWOOD NOBLE (hereinafter referred to individually as

"NOBLE," or collectively as "PLAINTIFFS") is a resident of the County of Erie, and is a participant in the Plan. He retired in February 2003, prior to attaining age 65.  Shortly thereafter he commenced Non-Disqualifying Employment by working in a non-union, non-Plan based managerial work position in the construction industry while receiving his pension benefit and continued to so work after the "retirement" and "disqualifying employment" definitions were amended by The FUND in December 2011. He was forced to discontinue his employment by January 31, 2012, or face having his early pension benefit discontinued.

8.    Plaintiff DANIEL O'CALLAGHAN (hereinafter referred to individually as "O'CALLAGHAN," or collectively as "PLAINTIFFS") is a resident of the County of Niagara, and is a participant in the Plan. He retired in March 2007, prior to attaining age 65.  Shortly thereafter he commenced Non-Disqualifying Employment by working in a non-union, non-Plan based managerial work position in the construction industry while receiving his pension benefit and continued to so work after the "retirement" and "disqualifying employment" definitions were amended by The FUND in December 2011. Plaintiff O'Callaghan's early pension benefit was terminated as of February 1, 2012 since he chose to continue working in his employment through September 30, 2012. When Mr. O'Callaghan sought to cease his employment, and resume his pension benefit, he was forced to *re-retire* under a new, amended pension plan. His subsequent *retirement* was effected on October 1, 2012.

9.    Plaintiff CHARLES PUGLIA (hereinafter referred to individually as "PUGLIA," or collectively as "PLAINTIFFS") is a resident of the County of Erie, and is a participant in the Plan. He retired in November 2008, prior to attaining age 65.  Shortly thereafter he commenced Non-Disqualifying Employment by working in a non-union, non-Plan based managerial work position in the construction industry while receiving his pension benefit and continued to so

5

work after the "retirement" and "disqualifying employment" definitions were amended by The FUND in December 2011. He was forced to discontinue his employment by January 31, 2012, or face having his early pension benefit discontinued.

10.     Plaintiff KEVIN REAGAN (hereinafter referred to individually as "K. REAGAN," or collectively as "PLAINTIFFS") is a resident of the County of Niagara, and is a participant in the Plan. He separated from plan-based work in 2002, when he commenced employment in a non-union, non-Plan based position, before he was 55 years old. As a result, he suffered a Break in Service under the Plan. Upon reaching the age of 55, he retired in January 2005.  He continued his Non-Disqualifying managerial work position in the construction industry while receiving his pension benefit and continued to so work after the "retirement" and "disqualifying employment" definitions were amended by The FUND in December 2011. He was forced to discontinue his employment by January 31, 2012, or face having his early pension benefit discontinued.

11.     Plaintiff RONALD REAGAN (hereinafter referred to individually as "R. REAGAN," or collectively as "PLAINTIFFS") is a resident of the County of Niagara, and is a participant in the Plan. He retired in August 2002, prior to attaining age 65.  Shortly thereafter he commenced Non-Disqualifying Employment by working in a non-union, non-Plan based managerial work position in the construction industry while receiving his pension benefit and continued to so work after the "retirement" and "disqualifying employment" definitions were amended by The FUND in December 2011. He was forced to discontinue his employment by January 31, 2012, or face having his early pension benefit discontinued.

12.     According to its Summary Plan Description (hereinafter "Plan"), Defendant U.A. PLUMBERS & STEAMFITTERS LOCAL 22 PENSION FUND (hereinafter referred to

6

individually as "the FUND," or collectively as "DEFENDANTS') is a defined benefit pension plan established to provide retirement benefits to Eligible Employees and, thus, Participants in the FUND.  The FUND is headquartered in Orchard Park, New York.

13.     Defendant BOARD OF TRUSTEES U.A. PLUMBERS AND STEAMFITTERS LOCAL NO. 22 (hereinafter referred to individually as "BOARD OF TRUSTEES," or collectively as "DEFENDANTS"), upon information and belief, is comprised of eight (8) Trustees, four (4) of which represent Contributing Employers and four (4) of which represent the Union, and is the *de facto* Named Fiduciary for the FUND, charged with exercising discretion and control over the FUND and the Plan.

14.     Defendant DONALD BROWN, JR. (hereinafter referred to individually as "BROWN," or collectively as "DEFENDANTS"), is an individual who, upon information and belief, has served as an Employer Trustee on the Defendant BOARD OF TRUSTEES of the U.A. PLUMBERS & STEAMFITTERS LOCAL 22 PENSION FUND at various times since 2002 and, in doing so, is, and has been, a fiduciary of the Plan.

15.     Defendant RICHARD COSTANZO (hereinafter referred to individually as "COSTANZO," or collectively as "DEFENDANTS") is an individual who, upon information and belief, has served as a Union Trustee on the Defendant BOARD OF TRUSTEES of the U.A. PLUMBERS & STEAMFITTERS LOCAL 22 PENSION FUND at various times since 2009 and, in doing so, is, and has been, a fiduciary of the Plan.

16.     Defendant JEREMIAH DONOVAN (hereinafter referred to individually as "DONOVAN," or collectively as "DEFENDANTS") is an individual who, upon information and belief, has served as a Union Trustee on the Defendant BOARD OF TRUSTEES of the U.A. PLUMBERS & STEAMFITTERS LOCAL 22 PENSION FUND at various times since 2005

7

and, in doing so, is, and has been, a fiduciary of the Plan.

17.    Defendant DAVID GRIMBLE (hereinafter referred to individually as "GRIMBLE," or collectively as "DEFENDANTS") is an individual who, upon information and belief, has served as a Union Trustee on the Defendant BOARD OF TRUSTEES of the U.A. PLUMBERS & STEAMFITTERS LOCAL 22 PENSION FUND at various times since 2002 and, in doing so, is, and has been, a fiduciary of the Plan.

18.    Defendant PATRICK LOOMIS (hereinafter referred to individually as "LOOMIS," or collectively as "DEFENDANTS") is an individual who, upon information and belief, has served as a Union Trustee on the Defendant BOARD OF TRUSTEES of the U.A. PLUMBERS & STEAMFITTERS LOCAL 22 PENSION FUND at various times since 2007 and, in doing so, is, and has been, a fiduciary of the Plan.

19.    Defendant RANDOLPH LUTZ (hereinafter referred to individually as "LUTZ," or collectively as "DEFENDANTS") is an individual who, upon information and belief, has served as an Employer Trustee on the Defendant BOARD OF TRUSTEES of the U.A. PLUMBERS & STEAMFITTERS LOCAL 22 PENSION FUND at various times since 2009 and, in doing so, is, and has been, a fiduciary of the Plan.

20.    Defendant ROBERT MAZE (hereinafter referred to individually as "MAZE," or collectively as "DEFENDANTS") is an individual who, upon information and belief, has served as a Union Trustee on the Defendant BOARD OF TRUSTEES of the U.A. PLUMBERS & STEAMFITTERS LOCAL 22 PENSION FUND at various times since 2002 and, in doing so, is, and has been, a fiduciary of the Plan.

21.    Defendant DAVID QUACKENBUSH (hereinafter referred to individually as "QUACKENBUSH," or collectively as "DEFENDANTS") is an individual who, upon

information and belief, has served as an Employer Trustee on the Defendant BOARD OF TRUSTEES of the U.A. PLUMBERS & STEAMFITTERS LOCAL 22 PENSION FUND at various times since 2002 and, in doing so, is, and has been, a fiduciary of the Plan.

22.     Defendant PETE SEAGER, SR., (hereinafter referred to individually as "SEAGER," or collectively as "DEFENDANTS") is an individual who, upon information and belief, has served as an Employer Trustee on the Defendant BOARD OF TRUSTEES of the U.A. PLUMBERS & STEAMFITTERS LOCAL 22 PENSION FUND at various times since 2002 and, in doing so, is, and has been, a fiduciary of the Plan.

23.     Defendant DANIEL BRITZZALARO (hereinafter referred to individually as "BRITZZALARO," or collectively as "DEFENDANTS") is an individual who, upon information and belief, has served as a Union Trustee on the Defendant BOARD OF TRUSTEES of the U.A. PLUMBERS & STEAMFITTERS LOCAL 22 PENSION FUND at all times since 2002 and, in doing so, is, and has been, a fiduciary of the Plan.

24.     Defendant RICHARD EVANS (hereinafter referred to individually as "EVANS," or collectively as "DEFENDANTS") is an individual who, upon information and belief, has served as a Union Trustee on the Defendant BOARD OF TRUSTEES of the U.A. PLUMBERS & STEAMFITTERS LOCAL 22 PENSION FUND at all times since 2014 and, in doing so, is, and has been, a fiduciary of the Plan.

27.     Defendant JOHN NUTTLE (hereinafter referred to individually as "NUTTLE," or collectively as "DEFENDANTS") is an individual who, upon information and belief, has served as an Employer Trustee on the Defendant BOARD OF TRUSTEES of the U.A. PLUMBERS & STEAMFITTERS LOCAL 22 PENSION FUND at all times since 2014 and, in doing so, is, and has been, a fiduciary of the Plan.

9

28.     Defendant MICHAEL McNALLY (hereinafter referred to individually as "McNALLY," or collectively as "DEFENDANTS") is an individual who, upon information and belief, has served as a Union Trustee on the Defendant BOARD OF TRUSTEES of the U.A. PLUMBERS & STEAMFITTERS LOCAL 22 PENSION FUND at all times since 2002 and, in doing so, is, and has been, a fiduciary of the Plan.

29.     Defendant VAN MOLLENBERG (hereinafter referred to individually as "MOLLENBERG," or collectively as "DEFENDANTS") is an individual who, upon information and belief, has served as an Employer Trustee on the Defendant BOARD OF TRUSTEES of the U.A. PLUMBERS & STEAMFITTERS LOCAL 22 PENSION FUND at all times since 2008 and, in doing so, is, and has been, a fiduciary of the Plan.

30.     Defendant DAVID MUSKOPF (hereinafter referred to individually as "MUSKOPF," or collectively as "DEFENDANTS") is an individual who, upon information and belief, has served as an Employer Trustee on the Defendant BOARD OF TRUSTEES of the U.A. PLUMBERS & STEAMFITTERS LOCAL 22 PENSION FUND at all times since 2002 and, in doing so, is, and has been, a fiduciary of the Plan.

31.     Defendant JOHN SAMAR (hereinafter referred to individually as "SAMAR," or collectively as "DEFENDANTS") is an individual who, upon information and belief, has served as an Employer Trustee on the Defendant BOARD OF TRUSTEES of the U.A. PLUMBERS & STEAMFITTERS LOCAL 22 PENSION FUND at all times since 2014 and, in doing so, is, and has been, a fiduciary of the Plan.

32.     Defendant GEORGE SCHALK (hereinafter referred to individually as "SCHALK," or collectively as "DEFENDANTS") is an individual who, upon information and belief, has served as a Union Trustee on the Defendant BOARD OF TRUSTEES of the U.A.

10

PLUMBERS & STEAMFITTERS LOCAL 22 PENSION FUND at all times since 2008 and, in doing so, is, and has been, a fiduciary of the Plan.

33.     Defendant E. MICHAEL REDMOND (hereinafter referred to individually as "REDMOND," or collectively as "DEFENDANTS") is an individual who, upon information and belief, is a former administrator and/or manager of the FUND and in doing so was a fiduciary with respect to the Plan and all aspects of administration for which he was vested.

34.     Defendant DEBRA KORPOLINSKI (hereinafter referred to individually as "KORPOLINSKI," or collectively as "DEFENDANTS") is an individual who currently serves as Plan Administrator for the FUND and in doing so is a fiduciary with respect to the Plan and all aspects of administration for which she is vested and for which no other person or entity is responsible for.

## STATEMENT OF CLAIM

35.     Plaintiffs repeat and reallege every allegation previously set forth in Paragraphs 1 through 34, and with the same force and effect as if set forth fully herein.

36.     Both the May 1, 2002 and the May 1, 2009 Plans provide a Special Early Retirement benefit to "[a]ny Participant who retires on or after June 1, 1998, on or after his fifty-fifth (55th) birthday and whose combined age and Years of Special Service shall equal eighty-five (85) or more, shall be entitled to a monthly pension equal to his Accrued Benefit on the date he makes application for Special Early Retirement."

37.     Both the May 1, 2002 and the May 1, 2009 Plans define a Year of Service as a "Plan Year in which the Employee has eight hundred (800) or more Hours of Service."

38.     Both the May 1, 2002 and the May 1, 2009 Plans define an Hour of Service as

"each hour for which an Employee is directly or indirectly paid or entitled to payment by the Employer pursuant to the terms of the Collective Bargaining Agreement for the performance of duties."

39.     The Plans define Employee as "all persons covered by a Collective Bargaining Agreement between the Union and a Contributing Employer . . ."

40.     The Plans define Employer and Contributing Employer as a "signatory to a Collective Bargaining Agreement with the Union requiring contributions to this Fund."

41.     The Plans define Covered Employment as "employment of an Employee by a Contributing Employer."

42.     Each of the Plaintiffs accrued Hours and Years of Service and had, between their age and Years of Service, a minimum of 85 points at the time of their respective retirement dates, thus qualifying them for Special Early Retirement benefits.

43.     Each of the Plaintiffs left Covered Employment at, or before, the time of his retirement.

44.     None of the Plaintiffs continued to earn Hours of Service or receive contributions for any work performed by them subsequent to their retirement date.

45.     The Plans provide that certain types of employment following retirement is Disqualifying and will cause a Participant's pension to be suspended during the time that he is engaged in such Disqualifying work.

46.     The Plans further provide that a Participant can work, subsequent to his retirement, in certain management positions in the industry, which are deemed to be Non-Disqualifying Employment.

47.     Specifically, Participants can engage in post-retirement work as a manager,

project manager, or estimator for a Contributing Employer and continue to collect their pension benefits.

48.     It was standard practice for Participants to take Special Early Retirement once they achieved 85 or more points, withdraw from Covered Employment, and return to work in non-Plan, Non-Disqualifying Employment in order to subsidize their retirement income.

49.     All of the Plaintiffs affirmatively disclosed to Defendants, verbally and/or in writing, their intention to continue post-retirement employment, pursuant to the Non-Disqualifying Employment exception in the Plan.

50.     Each Plaintiff applied for early retirement at or about the respective times as set forth above in paragraphs 6 through 12, upon which Defendants approved same, and began paying benefits from the Plaintiff's effective date of retirement and continuing uninterrupted until December 2011, at which point Defendants unilaterally determined that each of the Plaintiffs had not, in fact, retired from the Plan since each Plaintiff resumed non-Plan, non-covered employment as a project manager, manager, and/or estimator shortly after his effective retirement date.

51.     Specifically, Defendants determined that Plaintiffs had not separated from employment with a *permanent intention to never work for a Contributing Employer again*, and, thus, their separation from Covered Employment did not constitute a *retirement*, despite the fact that each Plaintiff intended to and did permanently separate from Plan-based, Union-based work and only recommenced employment in non-Plan, non-Union based work, per the terms of the Plan, itself.

52.     Upon each Plaintiff's retirement, he ceased earning service credit toward his pension and no contributions were made to his pension plan inasmuch as the post-retirement

13

work being performed by each Plaintiff was management based work and, thus, was not covered by the collective bargaining agreement.

53.     In December 2011, Defendants notified Plaintiffs that their pension benefits would be terminated if they did not cease working in their Non-Disqualifying Employment.

54.     Plaintiffs K. REAGAN, R. REAGAN, PUGLIA, and NOBLE all discontinued their Non-Disqualifying Employment in order to continue receiving their pension benefits. In doing so, Plaintiffs K. REAGAN, R. REAGAN, PUGLIA, and NOBLE each suffered a loss of post-retirement income that they otherwise should and would have received but for the Defendants' unlawful actions.

55.     Plaintiffs METZGAR and MUELLER refused to discontinue their Non-Disqualifying Employment and, as a result, had their pension benefits discontinued. In doing so, Plaintiffs METZGAR and MUELLER have lost retirement benefits to which each is entitled and should have received but for the Defendants' unlawful actions.

56.     Plaintiff O'CALLAGHAN initially refused to discontinue his Non-Disqualifying Employment and, as a result, his pension benefit was terminated until he did so a few months later. As a result, Plaintiff O'CALLAGHAN has lost both retirement benefits and post-retirement income that he otherwise should and would have received but for the Defendants' unlawful actions.

57.     Defendants' determination that Plaintiffs did not actually retire is arbitrary, capricious, irrational, an abuse of discretion, and does not comport with the plain meaning and terms of the Plan, the Plan's past practices, ERISA, or established legal precedent.

58.     Plaintiffs appealed the Defendants' determination and commenced legal action by filing suit in this Court (Civil No.: 13-cv-85).

59.     Defendants countersued Plaintiffs for reimbursement of the alleged overpayment of pension benefits to them from the time of their retirements through January 2012, together with interest. That litigation is in the discovery phase and is still pending.

60.     Thereafter, in or around August 2016, Defendant BOARD OF TRUSTEES amended the Plan to allow itself to recover overpayments, together with 12% interest on same, by, among things, reducing future benefit payments made to a Participant.

61.     On December 6, 2016, Defendants FUND, BOARD OF TRUSTEES, KORPOLINSKI, SAMAR, MUSKOPF, MOLLENBERG, NUTTLE, EVANS, McNALLY, SCHALK, and BRITZZALARO determined that:

(a)     Plaintiff R. REAGAN was overpaid $357,774.18 in early retirement benefits without having separated from employment, and that, as of December 1, 2016, he owed the FUND $1,190,598.14 ($357,774.18 in principal and $832,823.96 in interest);

(b)     Plaintiff PUGLIA was overpaid $158,838.81 in early retirement benefits without having separated from employment, and that, as of December 1, 2016, he owed the FUND $347,331.08 ($158,838.81 in principal and $188,492.27 in interest);

(c)     Plaintiff O'CALLAGHAN was overpaid $182,787.31 in early retirement benefits without having separated from employment, and that, as of December 1, 2016, he owed the FUND $445,086.06 ($182,787.31 in principal and $262,298.75 in interest);

(d)     Plaintiff METZGAR was overpaid $138,336 in early retirement benefits without having separated from employment, and that, as of December 1, 2016, he owed the FUND $291,547.18 ($138,336 in principal and $153,211.18 in interest);

(e)     Plaintiff K. REAGAN was overpaid $282,423.55 in early retirement benefits without having separated from employment, and that, as of December 1, 2016, he owed the

FUND $794,741.86 ($282,423.55 in principal and $512,318.31 in interest);

    (f)    Plaintiff MUELLER was overpaid $397,970.25 in early retirement benefits without having separated from employment, and that, as of December 1, 2016, he owed the FUND $1,172,140.75 ($397,970.25 in principal and $774,170.50 in interest); and

    (g)    Plaintiff NOBLE was overpaid $381,489.48 in early retirement benefits without having separated from employment, and that, as of December 1, 2016, he owed the FUND $1,225,562.28 ($381,489.48 in principal and $844,072.80 in interest).

62.    Defendants retained Plaintiffs' (R. REAGAN, PUGLIA, O'CALLAGHAN, K. REAGAN, MUELLER, and NOBLE) entire pension benefit for the month of January and have reduced each month's benefit due, thereafter, by 25%.  [Plaintiff METZGAR is not yet 65 and has not discontinued his Non-Disqualifying Employment and, as a result, Defendants have refused to pay him a pension benefit since January 2012.]

63.    Upon information and belief, Defendants notified other similarly situated plan participants who retired from the Plan and returned to work in non-Plan, Non-Disqualifying Employment that they had also been overpaid benefits and, in turn, owed the Plan hundreds of thousands of dollars.

64.    Plaintiffs appealed Defendants' determinations.

65.    Subsequent to Plaintiffs' appeal submissions, and upon information and belief, Defendants offered to reduce the amounts allegedly owed by the Participants to pennies on the dollar, in exchange for signing a waiver and release of all claims.

66.    Upon information and belief, each and every other participant's alleged overpayments were reduced to approximately 5% of the original total amount calculated by Defendants to be owed.

16

67.    Plaintiffs R. REAGAN, PUGLIA, K. REAGAN, and NOBLE notified Defendants that each would also accept the settlement resolution proposed, however, Defendants refused to offer Plaintiffs the same resolution as other Participants who were not involved in litigation.

68.    Specifically, Defendants notified Plaintiffs that unless Plaintiffs METZGAR, MUELLER, and O'CALLAGHAN also agreed to release and waive their claims, there would be no settlement.

69.    On June 23, 2017, Defendants issued a final decision upholding their original determinations and have continued to reduce each Plaintiff's monthly pension benefit.

70.    Each of the Plaintiffs has been damaged in various amounts, to be determined by a trier of fact, by the FUND's actions.

71.    Plaintiffs have exhausted their administrative remedies and all prerequisites to the bringing of this action.

72.    This action is timely.


**FIRST CAUSE OF ACTION**
**(Violation of § 204(g) of ERISA (29 U.S.C. §1054(g))**


73.    Plaintiffs repeat and reallege every allegation previously set forth in Paragraphs 1 through 72, and with the same force and effect as if set forth fully herein.

74.    Section 204(g)(1) of ERISA provides that accrued benefits cannot be reduced or eliminated by plan amendment.  Section 204(g)(2) of ERISA provides that a plan amendment that eliminates or reduces early retirement benefits or retirement-type subsidies, shall be treated as reducing accrued benefits.

17

75.     The monthly early retirement benefits received by Plaintiffs prior to Defendants'
December 2011 and subsequent determinations that Plaintiffs did not actually retire from the
Plan in or about the dates as described above constitute accrued benefits under the Plan.

76.     Plaintiffs accrued benefits under a plan allowing them to supplement their
retirement income in certain post-retirement non-Plan, Non-Disqualifying Employment, and
each reasonably relied on the Plan's terms and the Defendants' representations in planning their
early retirements.

77.     The Defendants' subsequent amendment to the definition of what it means for a
Participant to "retire" undercuts that reliance by only paying benefits if Plaintiffs accepted a
substantial curtailment of the opportunity to do the kind of work they knew and were informed
they could perform subsequent to their retirements. *See* Central Laborers' Pension Fund v.
Heinz, 541 U.S. 739, 744 (2004).

78.     Plaintiff NOBLE's, K. REAGAN's, R. REAGAN's, and O'CALLAGHAN's loss
of the option of working in post-retirement, non-Plan, non-Union, Non-Disqualifying
Employment is a reduction of their early retirement benefits within the meaning of §1054(g)(2).

79.     Defendants' 2011 determination that each of the Plaintiffs did not actually retire
between the years of 2002 and 2009 because each of the Plaintiffs continued working in Non-
Disqualifying, non-Plan employment subsequent to his retirement constitutes a Plan amendment.

80.     Defendants' decisions in that regard, including its *de facto* Plan amendment of the
definition of what it means for a Participant to "retire," reduced and/or eliminated Plaintiffs'
accrued early retirement pension benefits.

81.     Had Plaintiffs known that the Defendants would abruptly change the Plan
interpretation and terms years after they took their early retirements with the expectation of

subsidizing their retirement benefits with post-retirement income in Non-Disqualifying Employment, none of the Plaintiffs would have left Covered Employment and/or retired at the age of 55. Instead, Plaintiffs would have continued working until the age of 65, or later, and continued to accrue a higher lifetime monthly pension benefit, be entitled to free medical coverage, be entitled to fringe benefits and all of the other benefits associated with Covered Employment.

82.     Subsequent to the December 2011 decision, Defendants terminated the monthly retirement and retiree medical benefits of Plaintiff METZGAR from approximately February 1, 2012 and continuing through the present and beyond, because he refused to discontinue his Non-Disqualifying Employment.

83.     Subsequent to the December 2011 decision, Defendants terminated the monthly retirement and retiree medical benefits of Plaintiff MUELLER from approximately February 1, 2012 until he turned age 65, because he refused to discontinue his Non-Disqualifying Employment.

84.     Subsequent to the December 2011 decision, Defendants terminated the monthly retirement and retiree medical benefits of Plaintiff O'CALLAGHAN from approximately February 1, 2012 through October 2012, because he refused to discontinue his Non-Disqualifying Employment.

85.     Thereafter, due to financial pressures associated with losing his monthly pension benefits, Plaintiff O'Callaghan ceased his Non-Disqualifying Employment and sought to resume his pension benefit. Defendants, however, forced O'Callaghan to *re-retire* under a new and amended plan, despite O'Callaghan's prior retirement under a different plan.

86.     Defendants threatened to terminate the monthly retirement benefits of Plaintiffs

NOBLE and K. REAGAN if each did not cease his Non-Disqualifying Employment by February 1, 2012, thus causing said Plaintiffs to quit their employment, thereby losing their post-retirement employment income, monthly wages and other benefits from February 1, 2012 until the present, and continuing into the future.

87.     Defendants' actions have damaged each Plaintiff in separate amounts to be determined by a trier of fact.

## SECOND CAUSE OF ACTION

### (Wrongful Denial of Benefits, Section 502(a)(1)(B) (29 U.S.C. §1132(a)(1)(B)))

88.     Plaintiffs repeat and reallege the allegations as set forth in Paragraphs 1 through 87 as if set forth fully herein.

89.     Each of the Plaintiffs was eligible for early retirement benefits under the Plan.

90.     Each of the Plaintiffs applied for, was approved for, and took an early retirement between the years of 2002 and 2009.

91.     Defendants paid Plaintiffs monthly retirement benefits every month from their effective date of retirement and through, at least, January 31, 2012, at which point Defendants threatened to terminate the pension benefit unless and until each Plaintiff severed all Non-Disqualifying Employment.

92.     Subsequent to January 31, 2012, Defendants terminated the benefits of Plaintiffs METZGAR, MUELLER, and O'CALLAGHAN inasmuch as each continued working.

93.     Plaintiffs METZGAR, MUELLER, and O'CALLAGHAN were all eligible for their early retirement benefits under the Plan.

94.     Plaintiffs METZGAR, MUELLER, and O'CALLAGHAN were allowed, pursuant

20

to the exception contained within Section 5.3 of the Plan, to continue Non-Disqualifying post-retirement employment as a project manager, manager, or estimator for an Employer.

95.     Defendants processed Plaintiffs' early retirement and paid benefits on same until such time that Defendants began applying a different definition of retirement and/or Non-Disqualifying Employment, both of which are outside the scope and terms of the Plan.

96.     Plaintiffs METZGAR, MUELLER, and O'CALLAGHAN are entitled to their monthly early retirement pension benefits for all times between their pre-December 2011 effective date of retirement and continuing uninterrupted provided that each continues to meet the Non-Disqualifying Employment requirements pursuant to the terms of the Plan.

97.     Plaintiffs METZGAR, MUELLER, and O'CALLAGHAN have been damaged in amounts to be determined by a trier of fact.

**THIRD CAUSE OF ACTION**
**(Breach of Fiduciary Duties, ERISA 502(a)(3) (29 U.S.C. § 1132(a)(3)))**

98.     Plaintiffs repeat and reallege the allegations as set forth in Paragraphs 1 through 97 as if set forth fully herein.

99.     Defendant KORPOLINSKI is appointed to the position of Plan Administrator and, as such, is responsible for various aspects of administration of the Plan and, by virtue of same, she serves as a fiduciary to the beneficiaries of the Plan.

100.    Defendant BOARD OF TRUSTEES is charged with the responsibility of plan administration and, by virtue of same, the BOARD and its individual Trustees serve as fiduciaries to the beneficiaries of the Plan.

101.    Defendants, through their actions and statements, misled Plaintiffs and precluded

them from making adequately informed retirement decisions.

102.    Had Plaintiffs known that the Defendants would abruptly change the Plan interpretation and terms years after they took their early retirements with the expectation of subsidizing their retirement benefits with post-retirement income in Non-Disqualifying Employment, none of the Plaintiffs would have left Covered Employment and/or retired at the age of 55. Instead, Plaintiffs would have continued working in Covered Employment until the age of 65, or later, and continued to accrue a higher lifetime monthly pension benefit, in addition to being entitled to free medical coverage, fringe benefits, and all of the other benefits associated with Covered Employment, during those ten years.

103.    The Defendants' collective determinations that (a) Plaintiffs never retired, despite having approved each Plaintiff's application for benefits and having paid each Plaintiff his early retirement benefits for years; that (b) Plaintiffs' early retirement benefits were subject to termination if they continued working, despite the fact that each was working in Non-Disqualifying Employment; that (c) Plaintiffs could not continue working in Non-Disqualifying Employment and still be considered *retired*; and/or that (d) some of the Plaintiffs had or will have to *re-retire* under a new and amended Plan, all as described above, are contrary to the terms of the Plan and to ERISA.

104.    Defendants' collective determinations have injured the Plaintiffs in amounts to be determined at trial by causing them to retire early and lose an increased retirement benefit; lose their employment incomes and/or their pension benefits and corresponding retiree medical benefits; and overall reducing the retirement benefit that each Plaintiff expected and was entitled to receive.

105.    All of the Plaintiffs will continue to be harmed until and unless the Defendants are

estopped from suspending, terminating, reducing, and/or modifying the early retirement pension

benefits to which each is and remains entitled by virtue of his early retirement before December

2011.

106.    All of the Plaintiffs will continue to be harmed until and unless the Defendants are

estopped from refusing to recognize Plaintiffs' original dates of retirement pre-December 2011.

107.    All of the Plaintiffs will continue to be harmed until and unless the Defendants are

estopped from forcing Plaintiffs to *re-retire* under a new and amended Plan which is less

advantageous to them.

108.    Plaintiffs will continue to be injured until and unless Defendants are estopped

from enforcing their determinations.


### FOURTH CAUSE OF ACTION

**(Interference with Protected Rights, ERISA Section 510, (29 U.S.C. § 1140))**

109.    Plaintiffs repeat and reallege the allegations as set forth in Paragraphs 1 through

108 as if set forth fully herein.

110.    The Plan is an employee benefit plan within the meaning of 29 U.S.C. § 1002(2)

and 29 U.S.C. § 1003(a).

111.    Plaintiffs are participants of the Plan within the meaning of 29 U.S.C. § 1002(7).

112.    Plaintiffs are also persons who have given information, testified, and/or are about

to give testimony relating to ERISA.

113.    Plaintiffs K. REAGAN, R. REAGAN, PUGLIA, and NOBLE have been

discriminated against for exercising the rights to which they are entitled under the provisions of

the Plan, to wit, Plaintiffs K. REAGAN, R. REAGAN, PUGLIA, and NOBLE have been refused

the same or similar opportunity to resolve the Defendants' claims against them as were provided to similarly situated participants and beneficiaries.

114.    Plaintiffs K. REAGAN, R. REAGAN, PUGLIA, and NOBLE have been discriminated against and disparately treated on the basis of both their participation in the pending litigation in this Court and on the basis of the participation of Plaintiffs MUELLER, METZGAR, and O'CALLAGHAN.

115.    Defendants' refusals to allow Plaintiffs the same or similar opportunity to resolve the Defendants' claims regarding overpayment, for pennies on the dollar, as were provided to similarly situated participants results in Plaintiffs being punished for their initial participation in their legal action challenging the Defendants' initial determinations regarding benefits to which they were entitled.

116.    Defendants' actions intend to interfere with the claims and rights of Plaintiffs METZGAR, MUELLER, and O'CALLAGHAN inasmuch as Defendants' refusals to allow Plaintiffs K. REAGAN, R. REAGAN, PUGLIA, and NOBLE to settle their claims and opt out of litigation is intended to coerce Plaintiffs METZGAR, MUELLER, and O'CALLAGHAN into giving up their claims for the benefits and rights to which each is entitled.

117.    Each of the Plaintiffs is damaged by the Defendants' actions in this regard.


**FIFTH CAUSE OF ACTION**

**(Liability for Breach of Fiduciary Duty, ERISA 409(a) (29 U.S.C. § 1109(a)))**

118.    Plaintiffs repeat and reallege the allegations as set forth in Paragraphs 1 through 117 as if set forth fully herein.

119.    Defendants are fiduciaries with respect to the Plan.

24

120.     Should it be determined that Plaintiffs did not actually retire when they left Covered Employment and took their Special Early Retirements, Defendants breached their responsibilities, obligations, and duties to both Plaintiffs and the Plan inasmuch as Defendants advised Plaintiffs that they could retire and resume working in post-retirement, Non-Disqualifying Employment; operated the Plan by allowing participants to retire from the Plan and resume working in post-retirement, Non-Disqualifying Employment; processed Plaintiffs' retirements, despite knowing that each was resuming post-retirement work in Non-Disqualifying Employment; and paid each Plaintiff his retirement benefits for years, despite knowing that each was working in post-retirement, Non-Disqualifying Employment.

121.     If a mistake was made, Defendants, and not Plaintiffs, are liable for same.

122.     Defendants, as fiduciaries to the Plan, are personally liable, jointly and severally, to make good to the Plan for all losses resulting from their breach(es).

## SIXTH CAUSE OF ACTION
### (Declaratory Judgment)

123.     Plaintiffs repeat and reallege the allegations as set forth in Paragraphs 1 through 122 as if set forth fully herein.

124.     Plaintiffs seek declaratory relief pursuant to 28 U.S.C. §2201 for the purpose of determining a question of actual controversy among the parties regarding the benefit disputes herein pursuant to 29 U.S.C. §1132(a)(3).

## SEVENTH CAUSE OF ACTION

### (Preliminary Injunction)

125.    Plaintiffs repeat and reallege the allegations as set forth in Paragraphs 1 through 124 as if set forth fully herein.

126.    Defendants' actions in reducing Plaintiffs' monthly pension benefits (100% for the month of January and 25% for each month thereafter and continuing indefinitely) is causing irreparable harm to Plaintiffs, inasmuch as Plaintiffs, as vulnerable retirees, are suffering emotional distress and anxiety in light of their advanced ages and their reliance on their fixed pension incomes to support their family and their retirement living.

127.    Given the length and expenses of litigation, it will be highly unlikely that an award of money damages could ever make each Plaintiff whole inasmuch as Plaintiffs will be significantly older, may predecease the resolution of this litigation, and will be unable to enjoy or utilize such an award at the future time that this matter is resolved.

128.    In order for Defendants to have succeeded in recovering any monies from Plaintiffs on Defendants' Counterclaims in the pending litigation, Defendants would have first needed to succeed on the merits of their claims that Plaintiffs did not actually retire and, if so, Defendants would further need to succeed on the argument that the interests of equity and justice warrant reimbursement to the Plan from the Plaintiffs, wherein this Court would determine what amounts ought to be reimbursed, if any, and at what interest rate, if any.

129.    Defendants' actions have changed the *status quo* between the parties. A preliminary injunction would restore the status quo, which was immediately in effect before the parties' dispute.

130.     Defendants' 2016 actions in amending the Plan to allow itself to take

26

administrative actions to recover alleged overpayments, together with 12% interest on same, and apply those procedures retroactively to Plaintiffs is also an improper attempt to circumvent Defendants' burdens under ERISA and is meant to undermine the Plaintiffs' ability to afford both retirement living and financing their legal claims as against Defendants.

131.    Plaintiffs have demonstrated a likelihood of success on the merits of their claims.

132.    In light of the fact that Defendants settled dozens of alleged overpayment claims for pennies on the dollar, there is no prejudice to the Defendants for enjoining their ability to collect any monies from Plaintiffs until and unless they first win on the merits of their claims that Plaintiffs did not actually retire and that justice and equity warrant such reimbursement by the Plaintiffs to the FUND.

133.    Defendants' actions are clearly punitive because Plaintiffs METZGAR, MUELLER, and O'CALLAGHAN refused Defendants' settlement proposal.

134.    Plaintiffs are severely prejudiced by Defendants' actions in reducing their retirement benefits and they will continue to be damaged until and unless Defendants are enjoined from continuing to reduce same.

WHEREFORE, Plaintiffs pray that this Court enter judgment in their favor and against Defendants as follows:

(a)    that it be Ordered that Defendants immediately cease reducing Plaintiffs' pension benefits and refund to them all monies collected from January 1, 2017 to date;

(b)    that it be Ordered that the Court declares the Defendants' termination of Plaintiffs' monthly retirement benefits to be arbitrary and capricious, a violation of the Plan, and a violation of § 204(g) of ERISA;

(c)    that it be Ordered that the Plaintiffs receive full monthly early retirement benefits from the date of termination to date, which are to be paid until

Plaintiffs fail to satisfy the terms and conditions of the Plan as they existed prior to the 2011 *de facto* and actual Amendments;

(d)     that it be Ordered that the previously terminated monthly retirement benefits be paid to Plaintiffs with pre-judgment interest from February 1, 2012 to date, together with any post judgment interest thereon;

(e)     that it be Ordered that Plaintiffs are entitled to damages for their lost employment income as a result of Defendants' directive that each cease working in order to continue collecting his pension benefit;

(f)     that Defendants be Ordered to recognize Plaintiffs' original pre-December 2011 retirement dates as valid and effective and, further, that it be Ordered that any such post-December 2011 retirement dates be deemed a nullity;

(g)     that Defendants be Ordered to cease forcing Plaintiffs to *re-retire* under any new Plan that was not in existence at the time that any of the Plaintiffs originally retired;

(h)     that it be Ordered that the Court declares Defendants' determinations and actions as complained of herein to constitute a breach of Defendants' fiduciary duties to Plaintiffs as participants in and beneficiaries of the Plan and that damages be awarded for same;

(i)     that it be Ordered that the Defendant Trustees and fiduciaries are jointly and severally liable to the Plan for any losses experienced by the Plan as a result of their breach(es);

(j)     that it be Ordered that Defendants pay Plaintiffs' attorney's fees and costs; and

(k)     that it be Ordered that Plaintiffs be awarded such further relief as this Court deems just and proper.


Dated: July 31, 2017
       Orchard Park, New York

                              */s/ Christen Archer Pierrot*

                              Christen Archer Pierrot, Esq.
                              Office: 3959 N. Buffalo Rd.,
                              Orchard Park, New York 14127
                              Telephone: (716) 553-9899
                              E-Mail: archerpierrot@gmail.com